## NO WARRANT FOR REFUSING TENDER.

Circuit Court of Cuyahoga County.

Louis Rich et al v. Jacob Maskovitz.

Decided, March 4, 1907.

*Sales—When Buyer May Not Reject Article Tendered Because of Quality.*

In the sale of articles not intended for a particular designated purpose, but only for re-sale, the presence in or among the articles tendered of a trifling amount of foreign or defective matter will not warrant the buyer in refusing the tender.

*E. C. Schawan* for plaintiffs in error.
*Kline & Harris,* contra.

Winch, J.; Henry, J., and Marvin, J., concur.

Maskovitz sued Rich and Fertel for damages for breach of contract to receive and pay for two carloads of "scrap," to consist of wrought steel and about twenty-five per cent. of malleable scrap, same to be free from stove plate, sheet iron and cinders. Rich and Fertel justified on the ground that the scrap tendered contained stove plate, sheet iron and cinders.

The plaintiff's own evidence tended to show that in the two carloads of scrap there was about one per cent. of stove plate, sheet iron and cinders. The defendants testified to the presence of much more of said objectionable materials.

The court charged the jury as follows:

"If you find that the scrap tendered by the plaintiff under this contract contained such a small quantity of the excluded kinds as to be trifling in amount as compared with the whole, such a quantity as to be fairly immaterial, then the defendants would not be justified in refusing to receive it and your verdict will be for the plaintiff. But if you find the quantity of stove plate and sheet iron contained in the cars tendered was a material part of the whole, such a quantity as to be fairly material, then the plaintiff could not recover.

"So you will have to ascertain the quantity of this stove plate, sheet iron and cinders, if any, that was in these cars, whether it

was such a small amount as to be immaterial or whether it was of sufficient amount to be material, considering the terms of the contract and the quantity tendered.''

The jury found for the plaintiff, deducting, however, the damages on one per cent. of the two carloads, by their computation showing that they were of the opinion that the scrap tendered was ninety-nine per cent. of it according to the contract.

We think the charge was warranted by the cases of *Cullen* v. *Bimm*, 37 O. S., 236, and *Kane* v. *Stone Co.*, 39 O. S., 1.

In the former case the second paragraph of the syllabus reads as follows:

''In an action for refusing to accept a lot of ice containing several hundred thousand cubic feet, which by the terms of the contract of sale was to be merchantable, the court charged the jury that the plaintiff could not recover unless it appeared that the ice as a lot was of merchantable quality, 'fit for the ordinary uses to which ice is put,' and such as would 'fairly pass the market.' *Held*: That in refusing to charge that all, that is, every part of the ice, should be merchantable, the court did not err.''

On page 240 of the opinion Judge Okey uses the following homely illustration:

''The rule upon the subject may be illustrated by a familiar example. Thus if A sells to B six sound apples, the tender of six apples, one of which is to any extent unsound, may not be a compliance with the contract; but where the sale is of a barrel of sound apples, the tender of a barrel of apples might be a compliance with the contract, although one apple in the barrel was to some extent unsound. Large lots of ice entirely free from impurities perhaps can not be found.''

The latter case involved a building contract, but affirmed the rule laid down in the ice case.

We find the following on page 11 of the opinion:

''Moreover, the stipulation that the stone should be 'free from iron and all spots and discoloration,' must be construed in view of the uses to which the material was to appropriated. Perhaps no lot of stone of the kind referred to is so perfect as to be wholly free from iron and spots. The rule in contracts of this sort. is stated in *Cullen* v. *Bimm*, 37 Ohio St., 236. Besides, the jury deducted $55 from the sum for which a verdict should have been

rendered in case of strict performance, and we may fairly say that this was because of iron or spots in the stone.''

In this contract we find the words ''free from,'' the same as in the case before us. We conclude that in the sale of articles not intended for a particular designated purpose, but only for resale, as in this instance, the presence in or among the articles tendered of a trifling amount of foreign or defective matter will not warrant the buyer in refusing the tender. Nor may the buyer reject the tender on the appearance of it to him, as suggested by plaintiff in error; otherwise all the jury would have to find would be the impression the tender made on the buyer, and not the real merits of it. However, there was no request to charge, and so no error can be predicated upon this proposition.

Exception was taken on the hearing to the refusal of the court to permit a witness to testify as to his estimate of the amount of stove plate, sheet iron and cinders in the two cars, based upon what he saw on the top and sides of the cars.

There are three reasons why there was no error in this ruling:

First. The jury could estimate as well as the witness.

Second. There was no offer to prove, after the objection was sustained; and

Third. The witness was subsequently permitted to give his estimate.

We find no prejudicial error in the record, and as there was an irreconcilable conflict in the evidence, we must accept the conclusion of the jury upon the facts of the case.

The charge failed to instruct the jury to deduct the amount of objectionable matter from the total weight of the two carloads, and figure the damages on the balance alone, but as the jury did this without instructions, the judgment upon its verdict is affirmed.